UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jonathon Ziesmer,                                     Civ. No. 12-3031 (PAM/JJK)

            Plaintiff,

v.                                                    **MEMORANDUM AND ORDER**

Derrick Lee Hagen, individually
and in his official capacity as a
Minnesota State Patrol Officer,

            Defendant.

---

This matter is before the Court on Defendant Derrick Lee Hagen's Motion for Summary Judgment. For the reasons that follow, that Motion is granted.

**BACKGROUND**

In the early morning hours of August 22, 2010, Ziesmer was driving on Interstate 94 in St. Paul with two of his friends, one of whom was in the front passenger seat and the other of whom was in the back seat. The front-seat passenger dropped his lit cigarette and Ziesmer pulled over on the shoulder to find it before it caused damage to his car. (Fodness Aff. Ex. 2 (Ziesmer Dep.) at 33, 34.) Officer Hagen happened to be driving the same direction on 94 and noticed Ziesmer's call pulled over. (Id. Ex. 1 (Hagen Dep.) at 22, 27.) Hagen was alone except for his drug detection dog, who remained caged in the squad car during the incident. (Id. at 26; Hagen Aff. ¶ 16.) Hagen pulled over and activated his "arrow-stick," which is a light bar that signals other drivers to be cautious. (Hagen Dep. at 28; Hagen Aff. ¶ 3.) Hagen did not activate his red and blue flashing lights, because it looked like Ziesmer was

simply a stranded motorist. (Hagen Aff. ¶¶ 4-5.)

When Hagen approached Ziesmer's car, he noticed that one of the car's occupants was moving around quite a bit, which caused him some apprehension. (Hagen Dep. at 29-30.) When he reached the car, Ziesmer rolled down his window and Hagen smelled marijuana. (Id. at 30.) Hagen also noticed a hammer on the front-passenger floor. (Id. at 30, 31.) Both observations caused Hagen further apprehension. Hagen then asked the front passenger to exit the vehicle. (Id. at 31.) When he did so, Hagen patted him down. (Id. at 33.) Finding nothing, Hagen instructed him to stand under the nearby overpass. (Id.) Ziesmer and his passengers claim that Hagen shoved the passenger as he exited the car. (Ziesmer Dep. at 36.)

Hagen then asked Ziesmer to exit the vehicle. (Hagen Dep. at 34.) Ziesmer refused. (Id.) According to Ziesmer, Hagen became angry and began yelling at him "at the top of his lungs." (Ziesmer Dep. at 38.) Ziesmer says that he called 911 and that Hagen grabbed the phone from his hand and threw it on the floor of the car. (Id. at 37-38.) Ziesmer admits, however, that he refused to exit the vehicle until Hagen's third request to do so. Ziesmer says that when he exited the vehicle, Hagen threw him to the ground, slammed his head on the pavement, and wrenched his shoulder and neck. (Id. at 40-41.) Hagen then handcuffed him, searched him, and put him in the squad car. (Hagen Dep. at 38-39, 42.)

Hagen denies throwing Ziesmer to the ground, slamming his head on the pavement, and wrenching his shoulder and neck. He testified that he believed that Ziesmer was planning to flee, so he opened the car door and pulled Ziesmer out and down to the ground in order to handcuff him. (Hagen Dep. at 36-37.)

2

It is undisputed that Hagen found a small amount of marijuana and a pipe on Ziesmer's person. (Id. at 38-39.) Hagen searched Ziesmer's vehicle, but found no other drugs. (Id. at 44, 45.) Hagen issued Ziesmer a citation and allowed him and the passengers to leave. (Id. at 45, 50-51.) Ziesmer drove his passengers home and then went to his own house. (Id. at 98.)

Ziesmer claims that Hagen's brutality resulted in facial contusions, scrapes, and spinal and musculature injuries, the latter of which have required multiple doctor visits, CT scans, and numerous physical therapy sessions. He also claims to now experience depression and anxiety. Ziesmer's Complaint alleges that Hagen violated 42 U.S.C. § 1983 by using excessive force against him.[1]

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every

---

[1] Ziesmer initially raised claims against Hagen in his official and individual capacity. At the hearing, he conceded that any claims against Hagen in his official capacity are barred by sovereign immunity. Thus, the only remaining claim is against Hagen in his individual capacity.

action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

"Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant asserts qualified immunity at the summary judgment stage, as here, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law on the date in question.[2] Id. "This standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Her v. Johnson, No. 11-1490, 2012 WL 3541817, at *2 (D. Minn. Aug. 10, 2012) (Kyle, J.)

---

[2] There is no dispute that Hagen was justified in demanding Ziesmer exit the car or in effecting Ziesmer's brief detention. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). The only issue in this case is whether the amount of force Hagen used was excessive and whether his use of that force violated Ziesmer's clearly established rights.

(quoting Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)).

In 2011 the Eighth Circuit noted that, "over the course of more than fifteen years, . . . it . . . remain [ed] an open question in this circuit whether an excessive force claim requires some minimum level of injury." Chambers, 641 F.3d at 904. Chambers definitively stated that even a de minimis injury can support an excessive-force claim. But "[g]iven the state of the law" before that decision, a reasonable police officer "could have believed that as long as he did not cause more than de minimis injury to an arrestee, his actions would not run afoul of the Fourth Amendment." Id. "In other words, it was not clearly established pre-Chambers that an officer violated an arrestee's rights if he caused only de minimis injuries. Her, 2012 WL 3541817, at *3 (citing Chambers, 641 F.3d at 908–09).

The incident here occurred in 2010, before the Court of Appeals decided the Chambers case. Accordingly, if Ziesmer's injuries are de minimis, then Hagen is entitled to qualified immunity.

The contusions and scrapes Ziesmer suffered did not require any medical attention, resolved themselves without any medical intervention, and were therefore de minimis. See, e.g., Her, 2012 WL 3541817, at *3 ("Bruises, a small cut on the forehead, and amorphous 'pain' do not rise to the level of injury that was required before Chambers to support an excessive-force claim."); Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) ("Relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were de minimis injuries."); Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005) (sheriff's blow that made plaintiff "see stars" and left her with a sore neck and

headache caused only de minimis injury). In addition, the neck and back injuries Ziesmer alleges are not properly substantiated. Ziesmer's medical records indicate that he has no identifiable injury and no need for treatment. (E.g., Fodness Aff. Ex. 13 (Mar. 18, 2011, letter from Dr. Michael Smith to Ziesmer noting that "there is nothing that requires surgery in your neck" and "no evidence of substantial problems" in Ziesmer's cervical spine).) Indeed, a CT scan taken just days after the incident showed no spinal abnormalities. (Id. Ex. 11.) And the records establish that Ziesmer did not even seek treatment for his alleged shoulder injury until July 2013, three years after the incident and seven months after he filed this lawsuit. (Id. Ex. 10 (Twin Cities Orthopedics records for Ziesmer).) The physician at Twin Cities Orthopedics noted that Ziesmer's shoulder MRI was "very normal" and that Ziesmer's shoulder was "without symptoms on exam." (Id. at 4.)

Ziesmer has presented no expert witness to opine as to his medical condition, either at the time of the incident or thereafter. Hagen, on the other hand, hired Dr. Jack Drogt to review Ziesmer's medical records and perform a physical examination on Ziesmer. Dr. Drogt concluded that "[t]here appears to be no orthopedic reason why [Ziesmer] has ongoing discomfort and, certainly, the paucity of objective findings to substantiate his ongoing subjective symptoms suggests that he has incurred no permanent injury." (Fodness Aff. Ex. 9 (Drogt Report) at 8.) Similarly, there are no medical records that substantiate Ziesmer's claims regarding anxiety and depression. Any injuries Ziesmer suffered were de minimis and Hagen is therefore entitled to qualified immunity.

Even if Ziesmer had established that the shoulder or neck injuries he alleges were more than de minimis, he has failed to provide any evidence linking those alleged injuries to Hagen's conduct.  See Butler v. Dowd, 979 F.2d 661, 669 (8th Cir. 1992) ("In order to establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury."). Ziesmer has proffered nothing—no expert witnesses, no medical records—that points to Hagen's alleged conduct as the source of Ziesmer's claimed injuries.  His claim therefore fails.

**CONCLUSION**

To the extent that Ziesmer has substantiated any of his claimed injuries, those injuries are de minimis.  Because the incident occurred before 2011, Ziesmer's right to be free from de minimis injury during a police intervention was not clearly established.  Hagen is entitled to qualified immunity on Ziesmer's claim.  Alternatively, Ziesmer has failed to establish that Hagen caused any of the injuries he claims.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 34) is **GRANTED**; and

2. The Complaint (Docket No. 1) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 8, 2014

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge