UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Jonathon Ziesmer,                                    Court File No.  12-CV-03031 (PAM/JJK)

              Plaintiff,

   vs.                                                          **DEFENDANT'S TRIAL BRIEF**

Derrick Lee Hagen,

              Defendant.

## INTRODUCTION

Plaintiff Jonathon Ziesmer ("Plaintiff") alleges a claim against Trooper Derrick Lee Hagen ("Trooper Hagen") of the Minnesota State Patrol pursuant to 42 U.S.C. § 1983.  The Complaint alleges that Trooper Hagen used excessive force against Plaintiff during a roadside encounter during the early morning hours of August 22, 2010.  The encounter began when Trooper Hagen noticed a vehicle pulled over onto the side of westbound Interstate 94 in the City of St. Paul.  Plaintiff claims that Trooper Hagen violated his constitutional right to be free from excessive force pursuant to 42 U.S.C.§ 1983 and the Fourth Amendment to the United States Constitution.  Plaintiff is seeking damages related to physical injuries he allegedly incurred as a result of Trooper Hagen's actions.  Plaintiff has made amorphous complaints of pain to six medical providers, but has never been diagnosed with any physical injury.

At trial, the evidence will prove that Trooper Hagen did not use any force against Plaintiff and that Trooper Hagen's actions were, at all times, objectively reasonable.

Because no force was used, the evidence will also establish that Plaintiff has not suffered any damages caused by the encounter on August 22, 2010.

## FACTS DEFENDANT WILL ESTABLISH AT TRIAL

In the early morning hours of August 22, 2010, Trooper Hagen was on routine patrol on eastbound Interstate 94 in the City of St. Paul. While on patrol, Trooper Hagen observed a vehicle pulled over onto the right shoulder of the Interstate. Concerned that the motorist may be in need of assistance and that the vehicle could present a hazard to oncoming motorists and the vehicle's passengers, Trooper Hagen pulled behind the vehicle. After activating his squad's arrow stick, Trooper Hagen exited his squad and approached the vehicle.[1]

Immediately on his approach to the vehicle, Trooper Hagen observed the front-seat passenger moving around and making furtive movements before appearing to bend quickly as if reaching for something. Trooper Hagen also smelled raw marijuana coming from inside of the vehicle. Once he reached the front passenger's window, Trooper Hagen observed a ball-peen hammer at the passenger's feet. This passenger had a visible stomach pulse and continued to make furtive movements.[2] In light of his observations

---

[1] An arrow-stick is a directional light bar that signals to vehicles approaching a stopped squad from behind that they should change lanes to the direction of the flashing lights or otherwise use caution upon approaching.

[2] A stomach pulse is visible when an individual's stomach can be seen moving in and out. Based on Trooper Hagen's significant experience as a licensed peace officer with the Minnesota State Patrol and as a Drug Recognition Expert, Trooper Hagen knew that a visible stomach pulse is an indicator commonly associated with an individual who is extremely nervous or has an elevated heart rate. This indicator is inconsistent with the general motoring public.

and the fact that he was alone on the side of a busy interstate in the early hours, Trooper Hagen was both concerned for his safety and believed that one of the vehicle's occupants was in possession of marijuana.

Trooper Hagen requested that the front-seat passenger exit the vehicle. The front-seat passenger calmly complied with Trooper Hagen's request. Without incident, Trooper Hagen conducted a brief Terry frisk or pat search of the front-seat passenger for weapons. The passenger was then asked to stand ahead of the vehicle and off on to the shoulder. By asking the front-seat passenger to stand away from the vehicle, Trooper Hagen wanted to ensure that the distance between the front-seat passenger allowed him enough time to react if the front-seat passenger attempted to charge him. Again, the passenger complied without incident and walked approximately 15 yards away to stand under a bridge or overpass.

From the passenger-side window, Trooper Hagen asked Plaintiff, who was the driver, to step out of the vehicle. Plaintiff refused to exit the vehicle. In response, Trooper Hagen again asked Plaintiff to exit the vehicle. Plaintiff again refused and responded by saying, "No, I'm calling my lawyer."

Trooper Hagen then walked around the vehicle to the driver's side door and again requested that Plaintiff step out of the vehicle. In response, Plaintiff began to roll up his window. Trooper Hagen saw Plaintiff attempting to put the vehicle into gear and immediately was concerned that Plaintiff was going to flee. To prevent Plaintiff from driving away, Trooper Hagen opened the driver's side door and guided Plaintiff out of the vehicle and onto the ground. Once Plaintiff was on the ground, Trooper Hagen

searched Plaintiff and placed him in handcuffs. During the search of Plaintiff's person, Trooper Hagen discovered a baggie of marijuana and a marijuana pipe with the residue of marijuana in the bowl.

After Plaintiff was handcuffed, an officer with the St. Paul Police Department pulled up behind Trooper Hagen's squad vehicle. The officer told Trooper Hagen that he had been driving on westbound 94, observed Trooper Hagen handcuffing Plaintiff in the opposite lane, and had circled back to see if Trooper Hagen needed any assistance. Trooper Hagen and the officer had a brief conversation before the other officer departed.

## UNRESOLVED SUBSTANTIVE ISSUES

The following substantive issues have not been resolved prior to trial:

### A.    Trooper Hagen Did Not Use Excessive Force.

As detailed above, Trooper Hagen denies that he used any force against Plaintiff, let alone excessive force.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). There is no "generalized 'excessive force' standard." *Id.* Rather, to determine whether a particular use of force is objectively reasonable, courts examine the facts and circumstances of each case, including the crime's severity, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or flees. *Id.* at 396. The determination of reasonableness necessarily requires consideration of the fact

that law enforcement officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396-97.

It is axiomatic that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Saucier v. Katz*, 533 U.S. 194, 208 (2001). The Eighth Circuit has plainly held that "not every push or shove violates the Fourth Amendment." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (citing *Graham*, 490 U.S. at 396). Instead, "the test is whether the force used to effect a particular seizure is 'reasonable.'" *Id.* This determination is not made in a vacuum, but "is an objective one." *Id.* (citing *Graham*, 490 U.S. at 490). The question is thus "whether the officer[']s actions are 'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation." *Id.* (citing *Graham*, 490 U.S. at 490).

Here, Trooper Hagen will establish at trial that he did not use any force against Plaintiff. To the extent that removing an individual from a vehicle can be considered "force," Trooper Hagen's actions were *per se* reasonable under the circumstances. *See, e.g.*, *Harrell v. Purcell*, 236 F. Supp.2d 526, 534 (M.D.N.C. 2002) (holding that an officer's use of "verbal commands and his bare hands to physically remove [an individual] from his truck" were not excessive as a matter of law). Plaintiff refused Trooper Hagen's repeated and lawful requests that Plaintiff exit his vehicle, began to close his window, and made a motion that indicated from Trooper Hagen's vantage point that Plaintiff was going to put the car into drive. Trooper Hagen thus acted reasonably

under the circumstances and did not violate Plaintiff's constitutional right to be free from excessive force.

## B.  Trooper Hagen Did Not Unreasonably Detain Plaintiff.

"It is well established . . . that a law enforcement officer may detain a person for investigation without probable cause to arrest if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *U.S. v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (citing *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989)) (quotations omitted).  The scope of an investigatory stop is "not exceeded when [a criminal suspect is] handcuffed and placed in a police car" during the search of a vehicle.  *U.S. v. Navarrete-Barron*, 192 F.3d 786, 791 (8th Cir. 1999).  *See also U.S. v. Miller*, 974 F.2d 953, 957 (8th Cir. 1992) (holding that it was reasonable for officers to handcuff two of six suspects during a *Terry* stop and stating that "[n]umerous cases have held that a police officer's use of handcuffs can be a reasonable precaution during a *Terry* stop").

In light of the circumstances, including the odor of marijuana, behavior of the vehicle's passengers, Plaintiff's behavior, including appearing to attempt to drive away, and the hammer, Trooper Hagen's investigatory detention of Plaintiff in the squad car was lawful.  *See generally id.*  After finding marijuana and drug paraphernalia on Plaintiff's person, it was unquestionably lawful for Trooper Hagen to detain Plaintiff while he searched Plaintiff's vehicle.  *Cf. U.S. v. Perdoma*, 621 F.3d 745 (8th Cir. 2010) (holding that under federal law an officer has probable cause to arrest a suspect for possession of marijuana when the officer detects the odor of marijuana emanating from the individual).

**C.     Trooper Hagen Is Entitled To Qualified Immunity.**

This case was remanded from the Eighth Circuit for a determination on whether Plaintiff can adduce sufficient evidence of injury to overcome qualified immunity and whether Plaintiff was unreasonably seized.   The issue of whether Trooper Hagen is entitled to qualified immunity should be reconsidered at the close of evidence.   Whether qualified immunity applies is a question for the Court.   *See Littrell v. Franklin*, 388 F.3d 578, 585 (8th Cir. 2004).

> A government official is protected by qualified immunity unless his conduct violates the "clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established."

*Chamber v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011).

An officer has qualified immunity even where he acts on a mistaken, but reasonable, belief.   *Saucier*, 533 U.S. at 201.   Indeed, "the officer's subjective intentions are irrelevant . . . ."   *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000) (citing *Graham*, 490 U.S. at 397) (internal quotations omitted).    "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'"   *Littrell*, 388 F.3d at 582 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).   "[T]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."   *Wilson v. Spain*, 209 F.3d 713 (8th Cir. 2000) (quoting *Graham*, 490 U.S. at 396) (internal quotations omitted).

A government official is protected by qualified immunity unless his conduct violates the "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." *Chambers*, 641 F.3d at 904. Until the Eighth Circuit Court of Appeals' opinion in *Chambers*, "[i]t was not clearly established . . . that an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury." *Id.* 908 (stating that until *Chambers*, "[i]t remain[ed] an open question in this circuit whether an excessive force claim requires some minimum level of injury"). As a result of the law's lack of clarity before the decision in *Chambers*, defendants in excessive force cases arising before June 6, 2011, are entitled to qualified immunity when the injuries arising from their conduct are *de minimis*. *Id.* at 908-09.

In *Chambers*, three officers applied what this Court characterized as "gratuitous use of force . . . [that] was not reasonable under the circumstances." *Id.* at 907. While handcuffed on the floor and compliant, an officer "called [the arrestee] a liar, cursed at him, kicked him several times on both sides of his body, and pressed his foot down on [the arrestee]'s back." *Id.* at 902. The arrestee was then transported from the police department to the jail to a hospital after complaining of back pain. *Id.* The arrestee was handcuffed and seated such that he "was leaning as far forward as possible, with [his] head almost touching the dashboard" before an officer "began to drive erratically,

accelerating and braking suddenly so that [he] would be jerked back and forth." *Id.*

During the 20-minute drive, an officer in the backseat "forcefully kicked the back of [the

arrestee's] seat and used his arm to choke [the arrestee] from behind." *Id.* When walking

into the hospital, officers "roughly jerked him around by his handcuffs." *Id.* The arrestee

reported to a doctor "that he was suffering from back and neck pain, which was so severe

that [he] was crying and had difficulty concentrating." *Id.* The arrestee was diagnosed

with a "back contusion" without bruising or swelling and x-rays of the arrestee's ribs and

spine failed to show any evidence of acute fractures. *Id.*

Despite these allegations, the Court held that the officers were entitled to qualified

immunity because at the time of the arrest "[i]t was not clearly established . . . that an

officer violated the rights of an arrestee by applying force that caused only *de minimis*

injury." *Id.* 908. Given the state of the law before *Chambers*, including at the time

Trooper Hagen detained Plaintiff,

> a reasonable officer could have believed that as long as he did not cause
> more than *de minimis* injury to an arrestee, his actions would not run afoul
> of the Fourth Amendment. A reasonable officer was permitted to assume
> that legal conclusion when determining how to proceed, and he is entitled
> to have his conduct judged according to that standard for purposes of
> qualified immunity.

*Id.* (citing *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc); *Harper v. Harris*

*Cnty.*, 21 F.3d 597, 601 (5th Cir. 1994) (per curiam)).

As discussed above, Plaintiff will be unable to establish at trial that Trooper Hagen

used excessive force against him. Plaintiff will also be unable to establish that he

received more than *de minimis* injury as a result of any of Trooper Hagen's actions. As

such, the Court should enter judgment as a matter of law in favor of Trooper Hagen at the close of evidence.

As previously stated, Trooper Hagen did not use any force on Plaintiff. *See supra* at 4-6. However, to the extent that Trooper Hagen guiding Plaintiff out of his vehicle could be considered "force," Trooper Hagen's actions are reasonable as a matter of law and he is entitled to qualified immunity. *See Graham*, 490 U.S. at 396 (stating that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it").

**D.     Damages.**

Plaintiff must further establish that any damages sustained were proximately caused by the actions of Defendant in using excessive force against him in violation of his rights under the Fourth Amendment. *See Martinez v. Cal.*, 444 U.S. 277, 285 (1990). Plaintiff has not provided any medical testimony connecting his allegations of physical injury to Trooper Hagen's alleged actions.

## CONCLUSION

Trooper Hagen will ask that the Court find as a matter of law that he has qualified immunity from this suit.   In the alternative, Trooper Hagen will ask the jury for a judgment in his favor by finding that his actions on August 22, 2010, were reasonable and did not violate any constitutional right.

Dated:  July 20, 2015

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
State of Minnesota

s/ **Kathryn A. Fodness**
Kathryn A. Fodness
Assistant Attorney General
Atty. Reg. No. 0392184
kathryn.fodness@ag.state.mn.us

Eric V. Brown
Assistant Attorney General
Atty. Reg. No. 0393078
eric.brown@ag.state.mn.us

445 Minnesota Street, Suite 1100
St. Paul, MN 55101-2128
Telephone:  (651) 757-1348
Fax:  (651) 282-5832

Attorneys for Defendant