UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jonathon Ziesmer, | |
| Plaintiff, | Case No: 0:12-cv-03031-PAM-JJK |
| v. | **PLAINTIFF'S TRIAL BRIEF AND STATEMENT OF THE CASE** |
| Derrick Lee Hagen, individually and in his professional capacity as a Minnesota State Patrol Officer, | |
| Defendants. | |

_____

This matter is set for a jury trial before The Honorable Paul A. Magnuson, United States District Judge, in Courtroom 7D, of the United States Courthouse, 734 Federal Building, 316 N. Robert Street, St. Paul, Minnesota beginning August 3, 2015 at 9:00 AM.

## INTRODUCTION

On August 22, 2010, a state trooper, Defendant Derrick Hagen, used excessive force against Plaintiff Jonathon Ziesmer on the side of an interstate, causing him to suffer injury to his shoulder and neck region and to experience considerable pain and suffering requiring years of treatment to alleviate the pain.

Mr. Ziesmer seeks relief for violations of his Fourth Amendment right to be free from unreasonable search and seizure and the use of excessive force under 42 U.S.C. §

1

1983,. The memorandum is intended to outlines the facts Plaintiff intends to present at trial and discuss the relevant legal issues in this case.

## STATEMENT OF FACTS

On August 22, 2010, Plaintiff Jonathon Ziesmer (hereinafter "Ziesmer") Travis Jones, and Tyler Jones were in Ziesmer's car returning home on Interstate 94 from an evening of checking out cars at Porky's on University Avenue in St. Paul. (Travis Jones Depo., Attached as Ex. 3 to Fodness Aff. at Doc. No. 38-1 (hereinafter "Jones Depo") at. p. 8, 17). Ziesmer was driving, Travis Jones was in the front passenger seat, and Travis Jones' younger brother, Tyler Jones was in the back seat. (Jones Depo at p. 10-11).

While traveling home on I 94, Travis Jones had just finished a cigarette and flicked the butt out of the passenger window which flew back in through the back window of the car and landed on the backseat floor of the car near. (Jones Depo at p. 8). Ziesmer pulled the car over to the shoulder of the interstate, put the car in park, and turned the engine entirely off, so that the cigarette butt could be disposed of. (Jones Depo at p. 8). The cigarette butt was located and thrown out of the window. (Jones Depo at p. 18).

As Ziesmer was preparing to leave the shoulder of the road and continue the drive home, he noticed that a squad car had pulled up behind his car. Trooper Hagen approached the front passenger side of the car where Travis Jones was seated. (Jones Depo at p. 35-36). Travis Jones' window was about halfway down when Trooper Hagen arrived. (Jones Depo at p. 20). Trooper Hagen asked the car's occupants what they were doing on the side of the road and they explained to him that they had pulled over to put

2

out a cigarette butt that had ended up in the back seat of the car.  (Ziesmer Depo at p. 35-36); (Jones Depo at p. 22).

Trooper Hagen then requested identification from all of the individuals.  The individuals complied without incident and gave Trooper Hagen their IDs.  He then went back to his squad car and ran all of the IDs through the computer database and found no outstanding warrants or any other concerning information regarding Ziesmer, his car, or the two Jones brothers.  (Ziesmer Depo at p. 76);   (Hagen Depo at p. 64-65).

Despite the fact that Trooper Hagen had no further articulable cause to continue or expand the scope of the investigatory stop, he nonetheless approached the passenger vehicle and asked Travis Jones to get out of the car.   Travis Jones complied with Trooper Hagen's request and got out of the car. (Jones Depo at p. 23).

Travis Jones was told by Trooper Hagen that he was going to search him.  As Travis Jones turned to put his hands on the car to allow the search, Trooper Hagen unnecessarily shoved Travis Jones into the side of Ziesmer's car. (Jones Depo at p. 23).  The unprovoked shove, startled and scared Ziesmer as he observed Travis Jones' head jerk backwards in response to the shove. (Ziesmer Depo at p. 36).  Trooper Hagen than searched Travis Jones.  He found nothing concerning during the search.  After the search, Trooper Hagen then instructed Travis Jones to stand under an overpass several feet down the highway. (Ziesmer Depo at p. 36).  Travis Jones complied with this request and stood under the overpass/bridge.  (Travis Jones Aff. at D.E. 38-1, p. 188, ¶ 10).

After directing Jones to stand under the overpass, Trooper Hagen approached Ziesmer's car and asked him if he would get out of the car.  (Ziesmer Depo at p. 37).

3

Ziesmer calmly asked Trooper Hagen why he wanted him to get out of the car. Trooper Hagen responded that he did not have to have a reason to pull Ziesmer out of the car. (Ziesmer Depo at p. 79; 37). Trooper Hagen than began to scream at Ziesmer to get out of the car and that he did not need a reason to pull him out of the car. (Ziesmer's Depo at p. 37). Ziesmer became so frightened by Trooper Hagen's conduct that he called 911 from his cell phone. (Ziesmer Depo at p. 37-38). The 911 operator could hear Trooper Hagen screaming in the background and asked Ziesmer his location. Ziesmer told her that he was on the highway. (Ziesmer Depo at p. 37-38).

Apparently upset that Ziesmer had requested assistance from 911, Hagen reached through the driver's window, grabbed the phone from Ziesmer's hand, hung it up, and threw it on the passenger floor. Trooper Hagen then grabbed Ziesmer's shirt with two hands, pulled him from the vehicle, threw Ziesmer against the side of the car, and then pulled him towards the oncoming traffic on the highway. (Ziesmer Depo at p. 84); (Tyler Jones Aff. at ¶ 17). Trooper Hagen then ordered Ziesmer to stand by the grass on the side of the road. Ziesmer did as was instructed and stood by the grass waiting for instructions between the rear of his vehicle and the front of Trooper Hagen's squad car. (Ziesmer Depo at p. 85); (Jones Depo at p. 31). Ziesmer stood there, compliant, with his hands by his side approximately 4-10 feet from Trooper Hagen, awaiting further instructions. (Jones Depo at p. 31-32); (Ziesmer Depo at 86).

Ziesmer, who only weighed 125 pounds, stood there with his hands empty and at his sides for approximately one entire minute as Trooper Hagen looked directly at him.

4

(Ziesmer Aff. at ¶ 2); (Ziesmer Depo at p. 85); (Jones Depo at p. 31); (Travis Jones Aff. at D.E. 38-1, p. 188 at ¶15).

Without provocation, Trooper Hagen then lunged himself at Ziesmer and threw him to the ground as hard as he could. (Ziesmer Depo at p. 85; 87). Ziesmer's head was the first part of his body to hit the ground. (Ziesmer Depo at p. 86). Then, as Ziesmer lay on his stomach, not resisting, Trooper Hagen drove his knee into Ziesmer's back. (Ziesmer Depo at p. 88). Trooper Hagen than violently pulled Ziesmer's hands and arms into the air behind his back causing his shoulder popped out of socket. (Ziesmer Depo at p. 88-89). Trooper Hagen then handcuffed Ziesmer's hands behind his back. (Ziesmer Depo at 41); (Jones Depo at p. 33-34). With Ziesmer cuffed and on his stomach, Trooper Hagen than punched Ziesmer approximately 4 – 8 times in the back of his head. (Ziesmer Depo at 41-42; 88). Trooper Hagen's punches to the back of Ziesmer's head were so forceful that they drove Ziesmer's head into the ground several times. (Ziesmer Depo at p. 41). Ziesmer was not resisting while being punched. (Tyler Jones Aff. at D.E. 38-1, p. 181 at ¶ 22); (Travis Jones Aff. at D.E. 38-1, p. 189 at ¶ 16); (Ziesmer Depo at p. 42). Ziesmer has sought extensive treatment from medical providers to tray and remedy the pain in his shoulder, neck, and upper back that still lingers even today nearly five years after the incident.

## DISPUTED ISSUES

The factual issue in dispute in this case is whether Trooper Hagen's use of force was reasonable. Hagen argues that he used limited force. Plaintiff contends that Hagen

tackled and then after he was handcuffed, struck him several times in the back of the head, causing his head to be driven into the ground.

## **DEFENDANT HAGEN IS LIABLE TO PLAINTIFF UNDER FEDERAL LAW**

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 989 (8th Cir. 2009). Courts examine the totality of the circumstances when assessing the reasonableness of the officer's conduct. *Orsak v. Metro. Airports Comm'n Airport Police Dep't*, 675 F. Supp. 2d 944, 952 (D. Minn. 2009).

The United Supreme Court has identified three elements relevant to this assessment: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. 386, 394 (U.S. 1989).

The facts show that the circumstances surrounding Plaintiff's interactions with Defendant Hagen on August 22, 2010 cannot be considered "tense, uncertain and rapidly evolving;" the "crime" at issue was not even a crime – being pulled to the side of the road. Indeed, Plaintiff Ziesmer was charged with a petty misdemeanor/misdemeanor crime of marijuana possession. Accordingly, a reasonable jury will find that Defendant Hagen's actions were not objectively reasonable and award Plaintiff Ziesmer

compensatory damages under §1983 because his conduct caused him to suffer an actual injury.

## PUNITIVE DAMAGES AND ATTORNEY FEES

Under 42 U.S.C. §§ 1981 and 1983, if the jury determines that Defendant Hagen's conduct involved reckless or callous indifference to Mr. Ziesmer's constitutionally protected rights, the jury may award punitive damages. Sections 1981 and 1983 also allow for the recovery of attorney fees.

## MOTIONS *IN LIMINE*

Plaintiff will file any motions *in limine* separate form this brief.

## LENGTH OF TRIAL

Plaintiff estimates that the length for the entire trial, including jury selection and jury charge, to be 2 days.

Dated: July 20, 2015
                                                                s/Christopher J. Kuhlman
Christopher J. Kuhlman
MN Bar No. 0386840
ATTORNEY FOR PLAINTIFF
**KUHLMAN LAW, PLLC**
333 Washington Avenue N., Suite 335
Minneapolis, MN 55401
Telephone: 612.349.2747
Fax: 612.435.9835
Email: ckuhlman@CkLegal.com